**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CARL ATKINSON, | ) | CASE NO. 3:20-CV-01482-JGC |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | CARMEN E. HENDERSON |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant, | ) | |

**I. Introduction**

Plaintiff, Carl Atkinson ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On September 23, 2014, Claimant filed applications for DIB and SSI, alleging a disability onset date of January 2, 2014. (ECF No. 12, PageID #: 317, 324). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 12, PageID #: 195, 207, 221, 233). On November 10, 2016, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 12, PageID #: 134). On January 24, 2017, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 12, PageID #: 107). The ALJ's decision became

final on December 14, 2017, when the Appeals Council declined further review. (ECF No. 12, PageID #:101). Claimant then filed suit in this Court, asserting, inter alia, that the Commissioner's step five determination was not supported by substantial evidence. (ECF No. 12, PageID #: 84). On December 10, 2018, this Court issued a Decision and Order vacating the Commissioner's unfavorable decision, and remanding the case to the Appeals Council for further action consistent with this Court's holding. (ECF No. 12, PageID #: 1475). Significantly, this Court found that the ALJ had failed to support his Step Five decision with substantial evidence and build an accurate and logical bridge between the evidence of record and the conclusion reached. (ECF No. 12, PageID #: 1474). In turn, the Appeals Council remanded the matter to the ALJ for a new evidentiary hearing. (ECF No. 12, PageID #: 1478). A second hearing was held on July 15, 2019 before a new ALJ. (ECF No. 12, PageID #: 1334). Claimant, represented by counsel, and a different impartial vocational expert testified. (ECF No. 12, PageID #: 1334-1368). On September 12, 2019, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 12, PageID #: 1303). The ALJ's decision became final on May 15, 2020, when the Appeals Council declined further review. (ECF No. 12, PageID #: 1294).

On July 6, 2020, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 14, 17, and 18). Claimant asserts that the ALJ's finding at Step Five is not supported by substantial evidence. (ECF No. 14 at 1).

### III. Background

#### A. Claimant's Hearing Testimony

The ALJ summarized Claimant's hearing testimony:

> The claimant testified that he had a heart attack and has a pacemaker and automatic implanted cardioverter defibrillator. He said he has

2

had two stents inserted in his coronary arteries since his previous hearing in 2016, and he sees his cardiologist every six months for monitoring and medications. He said he does not use nitroglycerin because it lowers his blood pressure too much. He testified that he experiences chest pain or tightness and shortness of breath about once every couple of months, triggered by circumstances such as temperature changes. He indicated he had three episodes of atrial fibrillation during 2017 and 2018, during which he was awakened at night by a racing heart rate. He said he can feel his heart jump or skip on a daily basis, and it can be intense and take his breath away. He indicated this occurs randomly, and if it continues, he has to lie down until it comes under control. However, he testified that his defibrillator has not activated. He said he sometimes feels lightheaded or dizzy, but he is not sure if that relates to his heart.

The claimant further testified that he has difficulty walking because he becomes weak and tired easily, and he has pain in his neck and back. He said his ability to walk has decreased since his prior hearing in 2016. He said he tries to walk for exercise, but he can only go about 500 feet and back a couple of times. He indicated he can lift about 10 to 15 pounds, and he can tolerate sitting for 45 to 60 minutes, but then has to get up to relieve a "pins and needles" feeling in his feet and hands. He said his back pain also causes numbness in his groin. The claimant testified that he undergoes physical therapy and chiropractic treatment, and he is scheduled to discuss injections. He indicated cervical fusion surgery was recommended, but he wanted to try less invasive options first. The claimant said he underwent surgery on both elbows, but it made the numbness in his hands worse, and he has a brace for trigger thumb, but it does not help the numbness in his hands. He said he also wears knee braces. The claimant described right shoulder pain when reaching overhead or to the side, and left shoulder pain where the leads of his defibrillator access his artery. He further testified to abdominal pain, lasting 10 or 15 minutes to all day, which he attributed to a side effect of his cholesterol medication. He said he has also been diagnosed with diabetes, which is being monitored, but he has not needed medication.

With regard to his activities, the claimant testified that sometimes he waits a day or two before showering, and he can use buttons, but when his pain flares and his hands become numb, he has difficulty turning doorknobs and holding objects such as bottles and tools. He said he attempted to take college classes in 2011 or 2012, but he could not type for any length of time. He said the numbness occurs not only when he is using his hands, but when he is extending them, such as while driving, or when they are just resting on a table or the

3

> arm of a chair. The claimant testified that he can do household chores, but has to lie down and rest afterward, sometimes for an hour or two. He said he can prepare a meal, but needs to sit and rest if the prep work involves more than 30 minutes of standing. He said he has to stand back from the microwave, and if he gets too close to magnets or anything with a strong magnetic or electrical force such as a generator or transformer, it interferes with his defibrillator, which emits a high-pitched signal.
>
> The claimant said he continues to drive, but his feet and hands become numb and he develops discomfort in his low back and hips if he drives for long distances. He said that about three years ago, he drove to Georgia, with rest breaks for 30 minutes every two hours, but last year his father did the driving, and they still had to stop to rest. He indicated his mother does his grocery shopping. The claimant said he has difficulty sleeping, and when he is not rested, it affects his heart rate, so he naps for an hour or two, five or six days per week.

(ECF No. 12, PageID #: 1310-1311).

### B. Vocational Expert

At the hearing, the ALJ asked the vocational expert several hypothetical questions. In the second hypothetical, the ALJ asked the vocational expert to

> assume an individual of the claimant's age, education, and vocational background. The individual has the ability to perform a full range of work at the light exertional level, except, [standing and walking a total of four hours in an eight-hour workday; ability to alternate positions between sitting and standing approximately every 30 minutes;] occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, and crouch; occasionally crawl; occasional overhead reaching with the left upper extremity; [frequent handing and fingering bilaterally;] only occasional exposure to extreme cold or heat; only occasional exposure to fumes, odors, dust, and gasses; no exposure to hazards, such as dangerous machinery and unprotected heights[; and no exposure to magnets or strong electrical outputs such as electrical generators.]

(ECF No. 12, PageID #: 1362-1363). The vocational expert testified that the individual could not perform Claimant's past work, but that significant number of jobs existed in the national economy

4

which the individual could perform. (ECF No. 12, PageID #: 1363). The vocational expert stated that his testimony was consist with the Dictionary of Occupational Titles ("DOT") "with the exception of the discussion regarding being off task, absent, … the equivalent of a sit/stand option, as well as the differentiation between the upper extremities." (ECF No. 12, PageID #: 1364-1365).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant has not engaged in substantial gainful activity since January 2, 2014, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3. The claimant has the following severe impairments: ischemic cardiomyopathy, coronary artery disease, and degenerative disc disease at C5-C7 (20 CFR 404.1520(c) and 416.920(C)).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except: stand/walk a total of four hours in an eight-hour workday; requires the ability to alternate positions between sitting and standing approximately every 30 minutes; occasionally climb ramps/stairs; never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, and crouch; occasionally crawl; occasional overhead reaching with the left upper extremity; frequent handling and fingering bilaterally; only occasional exposure to extreme cold or heat; occasional exposure to extreme fumes, odors, dusts, and gases; no exposure to hazards such as dangerous machinery and unprotected heights; and no exposure to magnets, or equipment with strong electrical outputs such as electrical generators.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20

6

C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

**C. Discussion**

Claimant raises one issue on appeal: whether the ALJ's finding at Step Five is supported by substantial evidence.

At Step Five the Commissioner has the burden of proof to show "that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (internal quotation marks and citation omitted). "This substantial evidence may be in the form of vocational expert testimony in response to a hypothetical question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Baker v. Barnhart*, 182 F. App'x 497, 500 (6th Cir. 2006) (citations and internal quotation marks omitted).

The Commissioner met this burden through the testimony of the vocational expert, who testified that work exists in the national economy that accommodates Claimant's RFC and vocational factors. During the hearing, the ALJ posed the following hypothetical:

> For my first hypothetical, I would like you to assume an individual of the claimant's age, education, and vocational background. The individual has the ability to perform a full range of work at the light exertional level, except, occasionally climb ramps and stairs; never

7

> climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, and crouch; occasionally crawl; occasional overhead reaching with the left upper extremity; only occasional exposure to extreme cold or heat; only occasional exposure to fumes, odors, dust, and gasses; no exposure to hazards, such as dangerous machinery and unprotected heights.

(ECF No. 12, PageID #: 1362). The vocational expert testified that such a person would not be able to perform Claimant's past relevant work but that there are significant jobs in the national economy which such a person could perform. (ECF No. 12, PageID #: 1362).

In a second hypothetical, the ALJ presented the same limitations as in the first hypothetical, but further limited the hypothetical to "reduced to standing and walking a total of four hours in an eight-hour workday, and requires the ability to alternate positions between sitting and standing approximately every 30 minutes; frequent handing and fingering bilaterally; *no exposure to magnets or strong electrical outputs such as electrical generators*." (ECF No. 12, PageID #: 1363 (emphasis added)). The vocational expert testified that such a person would have the ability to perform the same jobs as in the first hypothetical. (ECF No. 12, PageID #: 1363).[1] The vocational expert testified that his testimony was consistent with the DOT "with the exception of the discussion regarding being off task, absent, the, the equivalent of a sit/stand option, as well as the differentiation between the upper extremities. Those are not addressed specifically by the DOT or the companion volumes, but it's been based on my 20 years of experience as a vocational rehabilitation counselor." (ECF No. 12, PageID #: 1365). Claimant's counsel then adjusted the second hypothetical to include "zero exposure to electromagnetic fields". (ECF No. 12, Page ID #: 1365). The vocational expert testified that "the titles that were offered as involving, or, available in the national economy, I believe they would still exist. However, I would think there might be

---

[1] Additional hypotheticals followed, which are not relevant here.

8

some reduction in number but I wouldn't think it would be very much." (ECF No. 12, Page ID #: 1365). When asked how he interpreted the "electromagnetic field" limitation, the vocational expert stated: "That doesn't, it isn't one that's not very common. What I would, what I would infer that to being anything being around any kind of electrical field, any kind of generators, anything where the individual has to be near power, like a power-plant, per se, or anything where MRIs I would even, would even, being near MRI machines, anything that has a strong magnet would be something I would be, I would keep a person away from doing. So that would be my interpretation of that limitation." (ECF No. 12, PageID #: 1365-1366).

Claimant argues that the limitation proposed by his counsel is essentially the same as the limitation proposed by the ALJ based on the vocational expert's definition of an electromagnetic field limitation involving work environments encompassing the same limitations as those set by the ALJ. (ECF No. 18 at 4) (*compare* ECF No. 12, PageID #: 1365-1366 (vocational expert's understanding of "electromagnetic field" as "any kind of electrical field, any kind of generators, anything where the individual has to be near power, like a power-plant, per se, or … being near MRI machines, anything that has a strong magnet") *with* ECF No. 12, PageID #: 1363 (ALJ's limitation to "no exposure to magnets or strong electrical outputs such as electrical generators")). Claimant argues that based on this, the vocational expert's testimony that jobs exist in the national economy was speculative and in violation of SSR 00-4p. The Commissioner argues that the vocational expert's testimony regarding an electromagnetic field limitation is irrelevant to the limitation to magnets/electrical outputs, that Claimant has not shown any inconsistency between the vocational expert's testimony and the DOT, and that Claimant forfeit any argument regarding the basis of the vocational expert's testimony by not raising the issue at the hearing. (ECF No. 17 at 9, 10).

9

First, the Court agrees with the Commissioner that the vocational expert's explanation of his understanding of the limitation to "no electromagnetic fields" is not relevant to the ALJ's proposed, and ultimately adopted, limitation. A review of the language used by both the ALJ and Claimant's counsel demonstrates that Counsel's proposed limitation to "no electromagnetic fields" is not the same as the ALJ's hypothetical limitation to "no exposure to magnets or strong electrical outputs such as electrical generators" as the electromagnetic field limitation is broader. For example "any kind of electric field" is broader than "strong electrical outputs". Although Claimant's counsel's hypothetical subsumes the ALJ's hypothetical entirely, they are, in fact, not identical limitations.[2] When the vocational expert discussed the hypothetical limitation proposed by the ALJ, he was unequivocal in stating that significant jobs existed in the national economy. The vocational expert's speculation did not occur until the hypothetical proposed by Claimant's counsel addressed a broader limitation than that proposed by the ALJ. Thus, any speculation that occurred in the vocational expert's testimony was not relevant to his testimony regarding the ALJ's second hypothetical nor the RFC, which included the same limitations as the second hypothetical.

Second, Claimant fails to demonstrate that the ALJ's decision violated SSR 00-4p, which requires an ALJ to "obtain a reasonable explanation for ... apparent conflict[s]." *See* SSR 00–4p, 2000 WL 1898704, at *4. When asked if his testimony was consistent with the DOT, the vocational expert testified that it was "with the exception of the discussion regarding being off task, absent, the, the equivalent of a sit/stand option, as well as the differentiation between the upper extremities[,]" which were based on his 20 years' experience. (ECF No. 12, PageID #: 1365). The

---

[2] Moreover, the record supports a limitation to no magnets but not to all electrical fields. (*See* Claimant's testimony that doctors told him to avoid "[m]agnets. Anything that has a strong electrical magnetic force to it. That could be generators, transformers, anything that would hold a lot of electrical power to it." (ECF No. 12, PageID #: 1351)).

vocational expert did not identify any conflict regarding his testimony on magnets/electrical outputs. Claimant fails to identify any apparent or direct conflict between the vocational expert's testimony and the DOT. "[T]he ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p. This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168-69 (6th Cir. 2009) (internal citations omitted). Where a claimant has a full opportunity to cross-examine the vocational expert, "[t]he ALJ had no duty under S.S.R. 00–4p to interrogate him further." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (citing *Martin v. Comm'r of Soc. Sec.*, 170 Fed.Appx. 369, 374 (6th Cir. 2006) ("Nothing in S.S.R. 00–4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.")). Here, the ALJ asked the vocational expert whether his testimony conflicted with the DOT and the vocational expert identified the areas in which it did. Claimant's counsel then had a full opportunity to cross examine the vocational expert—and did so—but did not question the vocational expert's testimony regarding conflicts with the DOT. The ALJ fully complied with SSR 00–4p when he asked the vocational expert whether his "testimony [had] been consistent with the Dictionary of Occupational Titles[.]" *See Lindsley*, 560 F.3d at 606 (holding that the ALJ fulfilled his duties when he asked the vocational expert whether there was any "discrepancy between your opinions and the DOT standards," even if the vocational expert did not disclose a conflict).

Finally, the Court agrees with the Commissioner that Claimant forfeit any challenge to the basis for the vocational expert's testimony by failing to raise the issue at the hearing. *See Barrett v. Barnhart*, 355 F.3d 1065, 1067 (6th Cir. 2004) ("because [claimant's] lawyer did not question the basis for the vocational expert's testimony, purely conclusional though that testimony was, any

11

objection to it is forfeited."); *Coakwell v. Comm'r of Soc. Sec.*, No. 1:19 CV 2876, 2020 WL 7711125, at *10 (N.D. Ohio Dec. 29, 2020) ("a plaintiff forfeits arguments regarding deficient VE testimony where no cross-examination is conducted to probe the deficiency").

Thus, the vocational expert's opinion is itself substantial evidence for the ALJ's Step Five conclusion that there are jobs that exist in significant numbers in the national economy that Claimant could do despite his limitations. *Smith v. Halter,* 307 F.3d 377, 378 (6th Cir. 2001) (citation omitted); *Baker*, 182 F. App'x at 500; *see also O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 318 (6th Cir. 2020) (a "vocational expert's testimony constitutes substantial evidence" when the claimant failed to cross-examine the vocational expert, given that the ALJ is not required to conduct an independent investigation of the vocational expert's testimony.).

Accordingly, Claimant's sole issue has no merit.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: October 27, 2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).